| UNITED STATES DISTRICT COURT | | EASTERN DISTRICT OF TEXAS |
|---|---|---|

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 9:19-CR-6 |
| | § | |
| DEREK WILLIAMS | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant Derek Williams's ("Williams") *pro se* Motion (#37) filed pursuant to 18 U.S.C. § 3582(c)(1)(A) wherein Williams seeks a reduction of his term of imprisonment. The Government filed a response in opposition (#39). United States Probation and Pretrial Services ("Probation") reviewed the filings and recommends denying the motion. Having considered the motion, the submissions of the parties, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be dismissed or, in the alternative, denied.

I.     Background

On February 7, 2019, a federal grand jury in the Eastern District of Texas, Lufkin Division, returned a two-count Indictment (#4) charging Williams with Possession of a Firearm by a Prohibited Person (convicted felon), in violation of 18 U.S.C. § 922(g)(1), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of § 924(c)(1). On May 30, 2019, Williams pleaded guilty to both counts of the Indictment pursuant to a Rule 11(c)(1)(C) binding written plea agreement. On January 14, 2020, the court sentenced Williams to a term of 132 months' imprisonment in accordance with the terms of the plea agreement. He did not appeal his conviction or sentence. Williams, age 46, is currently housed at Federal Correctional

Institution, Seagoville ("Seagoville FCI"), located in Seagoville, Texas.  His projected release date is September 24, 2028.

The nature and circumstances of Williams's offense of conviction are summarized, as follows.  On November 23, 2018, a Lufkin Police Department ("LPD") officer observed a vehicle traveling without headlights at a high rate of speed.  The LPD officer conducted a traffic stop and identified the driver as Williams.  During the stop, another LPD officer observed a firearm in the vehicle and removed Williams from the vehicle for officer safety.  Officers conducted a search of Williams's person and discovered a second firearm.  A third firearm was found inside the vehicle.  One of the firearms had been reported stolen.  During a search of the vehicle, officers discovered two additional firearms, what appeared to be controlled substances, as well as drug distribution paraphernalia, including scales and plastic baggies.  The Texas Department of Public Safety Crime Laboratory in Tyler, Texas, analyzed the substances found in Williams's vehicle. The laboratory results showed that Williams was in possession of approximately 1.71 grams of a mixture or substance containing cocaine and approximately 60 grams of marijuana.  Williams admitted that he possessed the firearms in furtherance of a drug trafficking crime.

II.     Compassionate Release

A.     Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *accord Freeman v. United States*, 564 U.S. 522, 526 (2011); *see* 18 U.S.C. § 3582(c).  Section 3582(c)(1)(A) embodies a narrow exception to a conviction's finality.  *See Rutherford v. United States*, 608 U.S. ___, 146

S. Ct. 1320, 1326 (2026).  This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment.  The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

This provision is commonly referred to as "compassionate release."  *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate

---

[1]Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

release' because courts generally use it for prisoners with severe medical exigencies or infirmities."). The First Step Act "opened a new procedural route for seeking a reduction" by allowing the prisoner to "request that the BOP file a motion on his behalf, and, if it declines or fails to do so within 30 days, he may file a motion himself." *Rutherford*, 146 S. Ct. at 1328 (citing 18 U.S.C. § 3582(c)(1)(A)).

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Rutherford*, 146 S. Ct. at 1327; *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See*

U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances

that may qualify as "extraordinary and compelling."  *Id*. § 1B1.13(b).  These categories are:

(1)    the medical circumstances of the defendant;

(2)    the age of the defendant;

(3)     the family circumstances of the defendant;

(4)    whether the defendant was a victim of abuse while in custody;

(5)    other reasons similar in gravity to those previously described; and

(6)    an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the

following hurdles:

(1)    the defendant must have exhausted his administrative remedies;

(2)    "extraordinary and compelling reasons" must justify the reduction of his
       sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)    the reduction must be consistent with the Commission's applicable policy
       statements; and

(4)    the defendant must convince the court to exercise its discretion to grant the
       motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th

353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.        Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule."  *Franco*, 973 F.3d at 468.  "Mandatory but nonjurisdictional procedural filing requirements may be waived."  *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025).  Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived.  *McLean*, 2022 WL 44618, at *1.

The defendant bears the burden of proving that he has exhausted his administrative remedies before filing a motion for compassionate release. *United States v. Garcia-Martinez*, No. EP-24-CR-0764-DCG-1, 2025 WL 2427619, at \*2 (E.D. Tex. Aug. 18, 2025); *accord United States v. DeJean*, No. 2:18-cr-120, 2025 WL 3687269, at \*3 (E.D. La. Dec. 19, 2025); *United States v. Mahaffey*, No. 17-54-DLB-MAS-1, 2025 WL 1840598, at \*2 (E.D. Ky. July 3, 2025); *United States v. Escobar*, No. 15-CR-150-2 (ARR), 2024 WL 2111573, at \*2 (E.D. N.Y. May 10, 2024); *United States v. Avelar*, No. 3:16-cr-0351-B-2, 2022 WL 17096173, at \*2 (N.D. Tex. Nov. 20, 2022); *United States v. Singleton*, No. 14-168, 2022 WL 3576767, at \*1-2 (E.D. La. Aug. 19, 2022). Without evidence that the defendant requested compassionate release from the warden and that thirty days have passed since the warden received or denied the request, the defendant fails to satisfy § 3582(c)(1)(A)'s exhaustion requirement. *Avelar*, 2022 WL 17096173, at \*2 (finding the exhaustion requirement was not met where a defendant provided a copy of a letter purportedly sent to the warden but did not provide proof the warden received the letter) (citing *United States v. Knox*, No. 3:12-CR-0252-B, 2020 WL 4432852, at \*2 (N.D. Tex. July 31, 2020)). The Fifth Circuit has clarified that in order to exhaust his administrative remedies, a defendant must show that the BOP received his request for compassionate release before the defendant filed his motion for compassionate release with the court. *See United States v. Garrett*, 15 F.4th 335, 339-40 (5th Cir. 2021). A defendant is "required 'to properly exhaust . . . *before* filing' the motion." *Id*. at 340 (quoting *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (emphasis added)); *accord Franco*, 973 F.3d at 468 ("All requests for compassionate release must be presented to the [BOP] *before* they are litigated in the federal courts." *Franco*, 973 F.3d at 468 (emphasis added). The exhaustion requirement is not fulfilled if the defendant files his motion for

compassionate release with the court before he submits a request to the warden even when he subsequently requests compassionate release from the warden and exhausts his administrative remedies before the court rules on his motion. Such a court filing is deemed premature. *See DeJean*, 2025 WL at *4 (citing *Garrett,* 15 F.4th at 339-40).

A defendant's motion for compassionate release must be based on the same circumstances as those raised in his request for release to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *United States v. York*, No. 4:07-CR-181-SDJ, 2025 WL 1397198, at *2-3 (E.D. Tex. May 14, 2025); *United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)). "It would disrupt the 'orderly system for reviewing compassionate-release applications' and 'incentivize[] line jumping' to permit defendants to present grounds for compassionate release to the Court that the BOP had not already received the opportunity to consider." *United States v. Silcox*, No. 3:17-CR-134-TAV-HBG-1, 2020 WL 4341758, at *2 (E.D. Tenn. July 28, 2020) (quoting *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020)). Hence, the facts asserted in an inmate's request to the warden and in his motion for compassionate release must be consistent. *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *United States v. Reeves*, No. 3:18-cr-313-B,

2020 WL 3895282, at *2 (N.D. Tex. July 10, 2020); *United States v. Samak*, No. 91-189, 2020 WL 2473780, at *2 (E.D. La. May 13, 2020); *see Gonzalez*, 849 F. App'x at 117.

Further, "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord DeJean*, 2025 WL 3687269, at *3; *Mendoza-Garibay*, 2023 WL 307459, at *2. "It is well-settled that the exhaustion requirement is not satisfied when the defendant previously sought administrative relief *on a different ground* than the ground presented to the district court." *DeJean*, 2025 WL 3687269, at *3. Successive compassionate release motions must independently satisfy the exhaustion requirement. *United States v. Ford*, No. 1:16-CR-19-HAB, 2021 WL 5980368, at *2 (N.D. Ind. Dec. 16, 2021). "If a prisoner were only required to make one request to the BOP and forever after [be] able to file new motions asserting new grounds for relief, the purpose of the exhaustion requirement would be severely undermined." *United States v. Wardle*, No. 5:18-57-KKC, 2021 WL 4822827, at *3 (E.D. Ky. Oct. 14, 2021); *accord Rivas*, 833 F. App'x at 558; *Ford*, 2021 WL 5980368, at *2.

Here, the Government invokes § 3582(c)(1)(A)'s exhaustion requirement. The Government contends that "Williams does not satisfy the exhaustion requirement." In his motion, Williams makes no mention and gives no indication in his motion that he attempted to exhaust his administrative remedies. As the Government points out, there is no evidence before the court that Williams, in fact, submitted *any* request for compassionate release to the warden of the facility where he was housed at the time of the filing of his motion or to any other BOP personnel. Nor does Williams provide any evidence that he gave the BOP the information necessary to investigate

9

the grounds for relief he now raises. Williams did not furnish the court with a copy of any request he purportedly made to the warden or to other BOP personnel seeking compassionate release, and no such request appears in the case file. Absent evidence of a verifiable request for compassionate release to the warden, Williams cannot prevail.

The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *see United States v. Harper*, No. 24-30275, 2024 WL 4664018, at *1 (5th Cir. Nov. 4, 2024) ("[B]ecause the Government properly raised the rule requiring exhaustion in the district court, 'the court *must* enforce the rule.'" (quoting *Franco*, 973 F.3d at 468)); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Gomez*, No. 2:17-cr-41-KS-MTP, 2025 WL 420531, at *2 (S.D. Miss. Feb. 6, 2025) ("Congress used clear language: all requests for compassionate release must be presented to the [BOP] before they are litigated in the federal courts."); *United States v. York*, No. 17-00086-BAJ-RLB, 2024 WL 3771442, at *3 (M.D. La. Aug. 13, 2024) (recognizing that a court may not modify a term of imprisonment if a defendant has not filed a request with the BOP); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under §3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *see also Ross v. Blake*, 578

U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines…remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes…establish mandatory exhaustion regimes, foreclosing judicial discretion.").

In this instance, because Williams presents no evidence that he submitted a request to the warden of the facility where he was housed at the time he submitted his Motion for Compassionate Release or to any other warden or BOP personnel raising the claims he now asserts in his motion for compassionate release, he has not met his burden of proof to establish that he has exhausted his administrative remedies. Therefore, due to his failure to exhaust his administrative remedies before filing the current motion, the court lacks the authority to grant the relief Williams requests.

C.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Section 3553(a)(1) requires the court to consider the nature and circumstances of the defendant's offense of conviction as well as the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).

In this case, Williams possessed five firearms, one of which was reported as stolen, in addition to cocaine, marijuana, and drug distribution paraphernalia. Williams has an extensive criminal history, including prior convictions for Theft (2), Aggravated Robbery, Robbery Causing Bodily Injury, and Unlawful Possession of a Firearm, and is considered a career offender pursuant to U.S.S.G. § 4B1.1(a). Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at \*1 (5th Cir. May 18, 2022) (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when the district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting the defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal"). In addition, Williams committed the instant offense while on bond from Houston County, Texas for the offenses of Theft, Possession of a Controlled Substance, and Felon in Possession of Firearm. Furthermore, Williams has a history of illicit drug use; specifically, he reported that he began using Ecstasy at age 20 and

continued to use it approximately three times a year until his arrest in the instant offense. While incarcerated, Williams has engaged in repeated violations of prison regulations.[2]

In view of the nature and circumstances of his offense of conviction, Williams's extensive criminal history, his history of substance abuse, and his conduct while incarcerated, the court cannot conclude that Williams's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole. The Section 3553(a) factors do not support Williams's release.

III.    Conclusion

In sum, Williams has not satisfied his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. Williams has failed to show that he exhausted his administrative remedies before seeking compassionate release. In addition, the court notes that the Section 3553 factors weigh against Williams's requested relief. Williams's perverse behavior while incarcerated indicates a need for further rehabilitation. Therefore, in accordance with the foregoing analysis, Williams's *pro se* Motion for Reduction of Sentence Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (#37) is DISMISSED, or in the alternative, DENIED.

---

[2] On April 24, 2025, at the Texarkana Federal Correctional Institution ("Texarkana FCI"), Williams was observed by a BOP staff member engaging in prohibited autostimulatory sexual behavior directed toward the BOP staff member. A Texarkana FCI Disciplinary Hearing Officer ("DHO") applied disciplinary sanctions to Williams. Williams engaged in further sexual acts directed towards BOP staff after being temporarily transferred to Federal Transfer Center, Oklahoma City ("Oklahoma City FTC") in Oklahoma City, Oklahoma. On August 7, 2025, Williams was observed by BOP staff engaging in sexual acts. A DHO applied disciplinary sanctions to Williams. On November 1, 2025, after being transferred to Seagoville FCI, Williams was observed by a BOP staff member concealing an object under his leg. When ordered by the staff member to surrender the item, Williams handed the staff member an AT&T cell phone. He received disciplinary sanctions for this incident on January 15, 2026.

SIGNED at Beaumont, Texas, this 31st day of July, 2026.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE